GIRARD TRUST COMPANY

*v.*

STANDARD GAS COMPANY and JOSEPH E. STRICKER.

[Submitted December 6th, 1921. Decided December 22d, 1921.]

1. Book accounts, present and after acquired, may be mortgaged.

2. A corporation mortgage on all its assets, present and after acquired, includes book accounts.

3. A receiver of an insolvent public utilities corporation, operating its plant under the direction of the court, must account to a mortgagee for wear and tear, on the theory of waste, out of the profits of his operations.

4. In such a suit for foreclosure, the failure of the trustee to apply for a receiver in foreclosure, whereby the trustee would have been entitled to all the earnings of the corporation, *held* not to deprive the trustee of his equity in the funds earned at the expense of the mortgage security.

On bill, &c.

*Messrs. Lindabury, Depue & Faulks (Mr. Josiah Stryker),* for the complainant.

*Mr. William E. Foster,* for the receiver.

Girard Trust Co. *v.* Standard Gas Co.        *93 N. J. Eq.*

BACKES, V. C.

The mortgage under foreclosure was given by the defendant company to the complainant, as trustee, to secure a bond issue, of which there is now outstanding $601,700. The mortgage conveys the plant of the defendant company located in seventeen municipalities in Monmouth county to which, and the inhabitants thereof, it furnishes gas for heat and light. All of the company's property, tangible and intangible, owned at the time of the execution of the mortgage, and to be thereafter acquired, was subjected to the lien of the mortgage in these comprehensive terms, after describing particular land holdings:

"Also all and singular all other property, real, personal and mixed, of whatever kind and wheresoever situated, whether now owned or hereafter acquired by the company, including [without in anywise limiting or impairing by the enumeration of the same, the scope and intent of any general description contained in this indenture] all gas works and gas plants, machinery, engines, boilers, houses, shops, sheds, apparatus, gas mains, gas pipes, gas posts, burners, reflectors, meters and distributing systems of the company, in or through the county of Monmouth, State of New Jersey * * * all tools, fixtures, equipment, fuel, materials and supplies, all franchises, licenses, grants, interests, exemptions, immunities, contracts and ordinance rights and servitudes of every nature and description whatsoever; and all the estate, right, title and interest, property, possession. claims and demands of every nature and kind whatsoever, as well at law as in equity, now held, owned, possessed, enjoyed or claimed by the company and which it may hereafter acquire and any and every part thereof; and the reversion and reversions, remainder and remainders, earnings, tolls, rents, issues, income and profits thereof."

Shortly before this suit was begun the gas company was declared insolvent, and the defendant Stricker was appointed receiver, and he ever since has been operating the works under the order of the court. The complainant is entitled to a decree of foreclosure and sale, the only question being the extent of the lien of the decree.

When the receiver took hold there came to his hands book accounts—moneys due from customers to the corporation; and in the course of his operation others accrued to him as receiver from consumers to whom he had furnished gas. The complainant claims that the book accounts of the corporation as well as those contracted by the receiver are covered by the lien of its mortgage and ought to be included in the decree.

That the book accounts of the corporation, at its insolvency, are subject to the mortgage is not an open question in this court. A corporation may mortgage its book accounts—existing and to be after acquired. It was so held by Vice-Chancellor Lewis in *Commercial Trust Co.* v. *Wertheim Coal Co., 88 N. J. Eq. 143,* and affirmed by the court of errors and appeals, *sub nom. Commercial Trust Co.* v. *Drayton, 90 N. J. Eq. 264.* The decree below was modified, but only as to its application to certain of the accounts. In *Buvinger* v. *Evening Union Printing Co., 72 N. J. Eq. 321,* the precise point, under similar circumstances, and on a mortgage in words substantially like those above quoted came up for decision, and it was held that the book accounts outstanding at the time of the appointment of the receiver in insolvency were encumbered, and they were awarded to the mortgagee.    Vice-Chancellor Leaming, after holding that book accounts, existing and after acquired, may be mortgaged, says of the mortgage before him that "the intention of the parties to include in the lien of this mortgage all of the assets of the mortgagor then existing and thereafter to be acquired in the progress of its business is, to my mind, clearly manifest from the terms of the mortgage. Where the language used so clearly manifests a purpose to include all assets of mortgagor of every character, present and prospective, an over technical measurement of the specific words used should not be indulged in to defeat the general and manifest intention. No creditor of mortgagor could have been reasonably misled by the language used. I think it clear that the outstanding choses in action of mortgagor are covered by the lien of this mortgage."

The receiver will be directed to account to the complainant for the company's book accounts that came to him at his appointment.

The contention that the receiver's book accounts are subject to the lien of the mortgage as after-acquired property of the corporation is untenable. The receiver's operation of the company's plant was not a continuance of the company's business. The company ceased to function when it was declared insolvent and enjoined, in the language of the statute, "from exercising any of its privileges or franchises." The receiver took over its prop-

erty and affairs, not as its representative but as a statutorily created trustee, to liquidate the assets and distribute them among the creditors and stockholders. The book accounts arising from his management accrued to the trust, not to the moribund corporation. *Coddington* v. *Bispham, 36 N. J. Eq. 574.*

While these book accounts are not reached by the mortgage, I think the complainant has an equity in them. They were made possible only by the use of the mortgaged property at the expense of the mortgaged security, and to the extent to which this security has been depreciated by the use, there ought, in all fairness, be compensation, on the theory of compensation for waste. Ordinarily, a receiver in insolvency, when directed to operate, is limited to working up materials on hand into finished products, the better to market the same, and sometimes he is ordered to operate to preserve the assets for sale as a going concern, but here a great public utility and essentials of life were involved and at stake. The court's first duty was to the public to furnish it with heat and light, for, had they been denied, thousands of householders would have suffered acutely. Now, as it turns out, the receiver has made some money that goes to the credit of the trust estate, and it seems to me but equitable to allow therefrom the damage the mortgaged security sustained by the efforts that brought this fund into existence. The complainant might well have applied for a receiver in foreclosure and thus would have been entitled to all the earnings. None, perhaps, would have been appointed because the property already was in *custodia legis,* but the status of mortgagee in possession, in legal contemplation, would have been thereby attained. And while it is so that the possession of the receiver in insolvency was not in law the possession of the mortgagee, and was not for its benefit, any more than would a receiver in foreclosure of a second mortgage be regarded as holding for a prior mortgagee foreclosing by a separate suit (*Longdock Mills and Elevator* v. *Alpen, 82 N. J. Eq. 190*), the mere failure of the complainant to avail itself of its legal rights in this respect is no reason for depriving it of an equity in the funds earned at the expense of its security. In other words, the security ought not be prejudiced by the use

made of it under judicial direction while in the custody of the law.

The allowance for depreciation will be determined on further proofs. The amount will be a preferential lien on the funds in the hands of the receiver on his final accounting in the insolvency suit.